UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DERWIN JULES JACKSON,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>W. SULLIVAN; T. W. MEADORS; J. L. COBBS; M. S. EVANS; M. STAINER; T. TRAYNHAM; B. PHILLIPS,<br><br>Defendants-Appellees. | No.   11-15932<br><br>D.C. No.<br>1:07-cv-00178-OWW-SMS<br>Eastern District of California,<br>Fresno<br><br>ORDER AMENDING |

Before:  GOULD and BERZON, Circuit Judges, and SESSIONS,[*] District Judge.

The panel's disposition of April 12, 2017 is amended and replaced by the

amended disposition filed concurrently with this order.  With this substitution,

Plaintiff-Appellant's Petition for Panel Rehearing is DENIED.

---

[*]     The Honorable William K. Sessions III, United States District Judge for the District of Vermont, sitting by designation.



**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DERWIN JULES JACKSON, | No. 11-15932 |
| Plaintiff-Appellant, | D.C. No. 1:07-cv-00178-OWW-SMS |
| v. | |
| W. SULLIVAN; T. W. MEADORS; J. L. COBBS; M. S. EVANS; M. STAINER; T. TRAYNHAM; B. PHILLIPS, | AMENDED MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Eastern District of California
Oliver W. Wanger, District Judge, Presiding

Argued and Submitted September 16, 2016
San Francisco, California

Before: GOULD and BERZON, Circuit Judges, and SESSIONS,[**] District Judge.

Derwin Jules Jackson appeals the district court's order granting summary

judgment in favor of Defendant-Appellee prison officials ("Defendants") on

---

[*]       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]       The Honorable William K. Sessions III, United States District Judge for the District of Vermont, sitting by designation.

Jackson's constitutional and statutory claims. We affirm in part, reverse in part, and remand for further proceedings.

1. The district court concluded that the relevant Defendants—Phillips, Stainer, Evans, Meadors, Cobbs, and Sullivan—were entitled to qualified immunity on Jackson's claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*. Qualified immunity is not available with respect to claims for equitable relief, *Hydrick v. Hunter*, 669 F.3d 937, 939–40 (9th Cir. 2012), which Jackson consistently sought here.

Jackson's claims for equitable relief are, however, moot. Generally, "[o]nce an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) (quoting *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012)). Equitable claims are not moot to the extent the plaintiff suffers "continuing effects of the alleged violations" or has a "reasonable expectation that [Defendants] could violate [his] rights in the future." *Id*.

Jackson faced no adverse consequences for wearing dreadlocks after he was released from the California Correctional Institution in Tehachapi, California's ("CCI Tehachapi's") Security Housing Unit ("SHU") in 2004, either in that

2

institution, in the new facility to which he was transferred in early 2005, or at any time in the ensuing decade. Further, the treatment Jackson experienced is unlikely to reoccur even if he is transferred back. One of his director's level appeals was partially granted, with an order specifying additional staff training regarding the requirements for denying an inmate visitation or yard access. And CCI Tehachapi subsequently clarified its written policy regarding inmates with dreadlocks, now explicitly requiring prison staff to search dreadlocks manually and with a hand-held metal detector.[1]

RLUIPA does not authorize lawsuits for damages against prison officials in their official capacities, *Sossamon v. Texas*, 563 U.S. 277, 293 (2011), or in their individual capacities, *Wood v. Yordy*, 753 F.3d 899, 901 (9th Cir. 2014).[2] Because the statute does not provide Jackson a damages remedy, *see Jones*, 791 F.3d at 1031, and his equitable claims for declaratory and injunctive relief are moot, *see*

---

[1]We grant Defendants' Motion to Supplement the Appellate Record.

[2]Jackson has not invoked Congress's Commerce Clause authority here, so we express no opinion regarding whether that authority might permit a claim for RLUIPA damages in other circumstances. *Cf. Cotton v. Cate*, 578 F. App'x 712, 714 (9th Cir. 2014).

3

*Alvarez*, 667 F.3d at 1064, we affirm the district court's dismissal of Jackson's RLUIPA claims.[3]

2. We reverse the district court's grant of summary judgment to Defendants Meadors and Cobbs with respect to Jackson's Eighth Amendment claim regarding physical exercise.

Deprivations of physical exercise if sufficiently prolonged can satisfy the objective component of an Eighth Amendment claim. *See Thomas v. Ponder*, 611 F.3d 1144, 1150–51 (9th Cir. 2010); *Lopez v. Smith*, 203 F.3d 1122, 1132–33 (9th Cir. 2000) (en banc). It was clearly established in 2004 that exercise restrictions lasting longer than six weeks ordinarily give rise to Eighth Amendment liability. *See Lopez*, 203 F.3d at 1133; *Allen v. Sakai*, 48 F.3d 1082, 1087–88 (9th Cir. 1995). Jackson established that he was deprived of yard access for more than ten weeks, and so has made the necessary objective showing.[4]

Jackson has raised an issue of material fact regarding Meadors and Cobbs's liability for that deprivation. On December 9, 2004, more than six weeks after

---

[3]We do not reach Jackson's argument that 42 U.S.C. § 1983, rather than RLUIPA itself, provides a damages remedy for RLUIPA violations. Jackson waived this argument by raising it for the first time in his reply brief. *See Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 994–95 (9th Cir. 2009).

[4]Because Jackson's exercise deprivation lasted longer than six weeks, he was not separately required to demonstrate adverse medical effects resulting from that deprivation. *Lopez*, 203 F.3d at 1133 n.15.

Jackson filed his yard-access grievance, Meadors and Cobbs denied Jackson's second-level administrative appeal challenging his exercise restrictions. Jackson has sufficiently shown that Meadors and Cobbs were "aware of a 'substantial risk of serious harm'" to Jackson's health, *see Thomas*, 611 F.3d at 1150 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)), as they knew he was not allowed to exercise for a prolonged period and left that condition in place. Jackson also has raised a question of material fact regarding whether Meadors and Cobbs had any "reasonable justification" for the deprivation. *See id.* (internal quotation marks omitted). Even if Jackson violated the Operational Procedure Meadors and Cobbs cited in denying Jackson's appeal, violation of a prison policy is not sufficient in itself to justify a lengthy deprivation of physical exercise. *See id.* at 1155–56. Jackson has demonstrated that he at all times permitted prison staff to address security concerns by manually searching his dreadlocks or by using a metal-detector wand on his hair.

It was clearly established in 2004 that eliminating yard access, without a sufficient showing of necessity or consideration of any alternatives, could constitute deliberate indifference. *See Lopez*, 203 F.3d at 1133. The director's level review of Meadors and Cobbs's decision confirms that "a clear breach of security" was required to deny yard access, and that officials did not establish such

5

a breach in Jackson's case. We therefore hold, regarding Jackson's Eighth Amendment claim, that Meadors and Cobbs are not entitled to summary judgment on the basis of qualified immunity.

Jackson has not introduced evidence sufficient to raise a question of material fact regarding the liability of the other Defendants to his Eighth Amendment claim, Phillips, Stainer, Evans, and Sullivan. We affirm the district court's decision as to these defendants.

3. We affirm the district court's grant of summary judgment to Traynham regarding Jackson's First Amendment retaliation claim.

Jackson submitted evidence indicating that Traynham at one point had control over his property. Although the district court concluded otherwise, it is no obstacle that that evidence is not yet "in a form that would be admissible at trial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). However, considering this evidence, Jackson has not raised a dispute of material fact regarding the retaliation claim.

Jackson contends Traynham refused to give him his property, or stated that his property would be destroyed, because Jackson had filed an administrative grievance. But Jackson has not demonstrated that he was entitled to the property in question. And Jackson eventually received some of his property, suggesting that some if not all of his property was not destroyed. One document indicating that

6

Jackson's property was released to Traynham also shows that Jackson's property was "being mailed/donated/destroyed" because he "refused to make a selection" regarding disposal of his property under California Code of Regulations tit. 15, § 3191(c), indicating that Traynham's conduct regarding the property was governed by regulation, rather than retaliation. Further, the property at issue *was* at the time of the alleged incident the subject of an administrative appeal in which Jackson alleged that a different official had attempted to blackmail him into signing a form addressing disposition of his excess personal property, so Traynham's statement was factually correct in that regard. In sum, Jackson has not carried his burden to show a retaliatory motive or "the absence of legitimate correctional goals for the conduct of which he complains." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) (quoting *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995)). We therefore affirm the district court's grant of summary judgment to Traynham as to the First Amendment retaliation claim.

4. Jackson also challenges the magistrate judge's screening of his First Amendment Free Exercise claim. Assuming Jackson did not voluntarily dismiss this claim, we review his complaint de novo under the standard articulated by 28 U.S.C. § 1915A(b)(1) and affirm. *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000).

The Free Exercise Clause, which provides narrower protections than those

afforded by RLUIPA, does not require a neutral policy that incidentally burdens the exercise of religion to be the least restrictive means of furthering a compelling governmental interest. *See Holt v. Hobbs*, 135 S. Ct. 853, 859–60 (2015). In the prison context, when a policy "impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Jackson did not plausibly allege that the Defendants' challenged conduct bore no reasonable relationship to the legitimate penological interest of prison security. *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014). Jackson's complaint acknowledged that inmate hairstyles can implicate "security concerns." Prison officials cited security concerns regarding contraband when they denied Jackson's administrative appeals. Although one director's level appeal decision later determined that prison officials were required to pursue prison security by more narrowly tailored means—namely, by using a metal detector wand on or conducting a physical search of dreadlocks—the conclusion does not follow that the broader restrictions imposed by Defendants on Jackson were not reasonably related to prison security. The magistrate judge thus correctly concluded that Jackson's complaint, which Jackson declined to amend, did not plausibly state a Free Exercise claim. *See Henderson v. Terhune*, 379 F.3d 709, 713–15 (9th Cir.

2004) (holding that a prison hair-length regulation was reasonably related to legitimate penological interests and therefore did not violate the Free Exercise Clause).

5. Finally, Jackson challenges the district court's refusal to consider his First Amendment access to courts claim. We assume the screening judge implicitly dismissed this claim, and again review de novo under 28 U.S.C. § 1915A(b)(1). *See Resnick*, 213 F.3d at 447.

Jackson's complaint did not specify a "nonfrivolous" or "arguable" underlying claim, a necessary component of a backward-looking access to courts claim. *See Christopher v. Harbury*, 536 U.S. 403, 414–18 (2002). Jackson states only that his petition would have concerned the Ninth Circuit's denial of a certificate of appealability, without stating what claim or claims were raised, and attaches the Ninth Circuit's order, which cites provisions regarding the statute of limitations applicable to habeas petitions and the standard a petitioner must meet to obtain a certificate of appealability. Absent any other indication of the claim or claims' merit, which Jackson did not allege, denial of the certificate is a sufficient indication that the claim was not arguable. *See* 28 U.S.C. § 2253(c)(2).[5]

**AFFIRMED in part, REVERSED in part, and REMANDED.** The parties shall bear their own costs on appeal.

---

[5]We deny as moot Defendants' request for judicial notice.